[Civ. No. 46516. Second Dist., Div. Two. Mar. 24, 1976.]

ALFRED INSELBERG, Plaintiff and Appellant, v.
EDGAR INSELBERG et al., Defendants and Respondents.

## COUNSEL

Martin E. Jacobs for Plaintiff and Appellant.

Parker, Stanbury, McGee & Babcock, Waters, McClusky & Corcoran and Fritz B. Hax for Defendants and Respondents.

## OPINION

**FLEMING, J.**—Plaintiff Alfred Inselberg appeals an order granting a motion to quash service of summons for lack of jurisdiction on defendants Edgar and Rachel Inselberg, residents of Michigan, who appeared specially to contest jurisdiction over them in an action "for enticement of a child from her parent, return of overcharges in support payments, . . . payment of monies being withheld from plaintiff in breach of trust, agreement and fiduciary obligations and . . . legal and equitable relief to avoid unjust enrichment." The issue is whether the trial court had jurisdiction over defendants. (Code Civ. Proc., § 418.10, subd. (a)(1).)

### COMPLAINT

In his unverified complaint Alfred alleged in his first cause of action for enticement that he is the father of Louise Lea Inselberg, born 21 August 1960, and he had custody of Louise until 20 November 1974, when his brother, defendant Edgar Inselberg, became her guardian.

Louise's mother deserted the family in 1961. Because of personal, employment, and educational pressures Alfred arranged for Edgar and his wife, defendant Rachel Inselberg, to physically care for Louise for protracted periods up to 1974. In 1971 Edgar and Rachel realized they would not be able to have children of their own and became desirous of having Louise remain with them permanently. They disparaged Alfred, attempted to undermine the relationship between him and Louise, and urged Louise to stay with them as their daughter. In July 1974 Louise came to California to live with Alfred permanently. Edgar and Rachel refused to let Louise's dog accompany her. They continued to disparage Alfred and to entice Louise to return to them in Michigan. Edgar and Rachel furnished Louise the cost of transportation, and on 16 September 1974 Louise returned to Michigan. Louise then applied to have Edgar appointed her guardian. Edgar and Rachel used Alfred's love and regard for his daughter to prevent him contesting the guardianship for fear of hurting his daughter. For loss of the love, comfort, society, and companionship of his daughter Alfred claimed compensatory damages of $250,000 and punitive damages of $250,000.

In the second cause of action Alfred alleged that Edgar and Rachel took advantage of Alfred's difficulties to demand and extract at least $60,000 in excess of the costs required for the care of Louise.

In the third cause of action Alfred alleged that before his father died in 1974, the father placed money in joint accounts with Edgar, the elder son, with the understanding that on the father's death Edgar as trustee would divide the money equally between Edgar, Alfred, and their stepmother. Alfred has not been paid his share, and a constructive trust should be imposed on his share of these moneys.

In the fourth cause of action Alfred alleged that Edgar and Rachel are indebted to Alfred for money had and received "in the sum according to proof."

## Affidavits

In support of their motion to quash service of summons, Edgar and Rachel offered two affidavits. Under oath before a Michigan notary, Edgar declared that Louise had been in his care and custody for more than 12 years. In July 1974, when arrangements were made for Louise to visit Alfred, Alfred expressed interest in having Louise remain with him permanently, an interest he had often expressed before but

always withdrawn. Alfred said Louise would make the ultimate decision. Toward the end of the summer Alfred told Edgar that Louise would be returned only if certain moneys were paid to him. When Edgar refused to pay, Alfred said he would keep Louise. Louise talked to Edgar and Rachel by telephone and requested assistance in returning to Michigan. Edgar and Rachel did not encourage Louise to leave Alfred, but they did comply with her request for assistance in returning to Michigan. Back in Michigan, Louise filed a petition to name Edgar her guardian, and Edgar and Rachel instituted custody proceedings. Alfred came to Michigan and hired counsel to contest the proceedings, but at the guardianship hearing he did not appear and authorized his counsel to withdraw his objections. The court appointed Edgar as Louise's guardian, and custody proceedings were dismissed.

Under oath before a Michigan notary, Louise declared that for 12 years she has resided in Kalamazoo, Michigan, with Edgar and Rachel. They have provided her with love, care, guidance, and education. She visited her father in California from time to time. When she visited him in July 1974 he said he wanted her to remain with him permanently, but that her wishes and desires would control. When Louise said she wanted to return to Michigan, Alfred refused his permission. In September 1974 she returned to Michigan without the inducement or persuasion of anyone and petitioned a Michigan court to appoint Edgar guardian. In November 1974 the court appointed Edgar her guardian.

In opposition to the motion to quash service of summons, Alfred offered an unverified declaration in which he restated the allegations of the first cause of action of his complaint and added that Louise's return to California was intended to be-permanent. She came on a one-way ticket, he rented an apartment with extra room for Louise and her dog, and she enrolled in a local school. Edgar and Rachel spoke to Louise several times a week. When Louise said Edgar and Rachel wanted to send her a ticket to run away from him, Alfred told Edgar he would not tolerate interference with his domestic affairs. On the morning of 16 September 1974 Rachel waited outside Alfred's Santa Monica home, intercepted Louise on her way to the first day of school, and took her to Michigan. Louise admitted to Alfred in the office of his Michigan attorney that she had done this. On the afternoon of 16 September 1974 Edgar called Alfred to tell him Louise was in Michigan. Louise had no more than $10 with her when she left home, so Edgar and Rachel must have furnished the cost of transportation. Bills for Louise's support were submitted to Alfred in California, and Alfred paid them by check

drawn on a California bank account. Alfred denied consenting to Louise's return to Michigan and denied telling Louise she could decide whether or not to remain with him. Louise's petition for guardianship was filed only three days after her return to Michigan, so those papers must have been prepared in advance.

DISCUSSION

The issue before the trial court was not whether Alfred's complaint stated a cause of action (*Martinez* v. *Perlite Institute, Inc.,* 46 Cal.App.3d 393, 397, fn. 3 [120 Cal.Rptr. 120]) or whether the ultimate substantive issues should be resolved in his favor (*Ratcliffe* v. *Pederson,* 51 Cal.App.3d 89, 96-97 [123 Cal.Rptr. 793]), but whether Alfred had established the existence of California jurisdiction over Edgar and Rachel by a preponderance of the evidence. (*Arnesen* v. *Raymond Lee Organization, Inc.,* 31 Cal.App.3d 991, 995 [107 Cal.Rptr. 744].) In answering that question the trial court could disregard the allegations of the unverified complaint and require Alfred to prove the facts of jurisdiction by competent evidence. (See *Tri-State Mfg. Co.* v. *Superior Court,* 224 Cal.App.2d 442, 444 [36 Cal.Rptr. 750]; *McNutt* v. *General Motors,* 298 U.S. 178, 184, 189 [80 L.Ed. 1135, 1138, 1141, 56 S.Ct. 780].)

Alfred's unverified declaration was not competent evidence. Moreover, it contained hearsay, opinion, and supposition. The trial court was entitled to ignore it. (*People* v. *United Bonding Ins. Co.,* 272 Cal.App.2d 441, 446 [77 Cal.Rptr. 310].) Alfred argues that Edgar and Rachel failed to object to the competency and form of his declaration and thereby waived those objections. Since the jurisdictional hearing in the trial court was not transcribed, the record on appeal does not reveal whether Edgar and Rachel objected to Alfred's declaration. But in any event, failure to object would be relevant only if the trial court relied on a declaration subject to objection; the trial court may ignore incompetent evidence whether or not objection has been made.

Thus the only evidence on jurisdiction that the trial court was required to consider was the declarations of Edgar and Louise. At most, those declarations showed telephone calls in the summer of 1974 between Edgar and Rachel in Michigan and Alfred and Louise in California which may have played some role in Louise's leaving Alfred and returning to Edgar and Rachel. The question, then, is whether those telephonic communications were sufficient to give the trial court power to exercise jurisdiction over Edgar and Rachel.

"A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) ■ Under constitutional principles, a forum state may subject a nonresident to personal jurisdiction if the nonresident has "minimum contacts" with the forum state and if maintenance of the suit in the forum state does not offend "traditional [concepts] of fair play and substantial justice." (*Lisoni* v. *Dave Cole Pontiac, Inc.,* 52 Cal.App.3d 445, 449 [125 Cal.Rptr. 120]; *Internat. Shoe Co.* v. *Washington,* 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057]; *McGee* v. *International Life Ins. Co.,* 355 U.S. 220 [2 L.Ed.2d 223, 78 S.Ct. 199]; *Hanson* v. *Denckla,* 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228].) ■ If a nonresident's activities in the forum state are "extensive or wide-ranging" or "substantial . . . continuous and systematic," jurisdiction for all causes of action is warranted. If not, then jurisdiction depends on the quality and nature of the activities in relation to the particular cause of action. The crucial inquiry thus concerns the character of the nonresident's activity in the forum, the substantiality of the connection of the cause of action with that activity, the balance of the convenience of the parties, and the interests of the state in assuming jurisdiction. (*Cornelison* v. *Chaney,* 16 Cal.3d 143 [127 Cal.Rptr. 352, 545 P.2d 264].)

■ In no sense may the activities of Edgar and Rachel in relation to California be regarded as "extensive or wide-ranging." Their activities must therefore be viewed in relation to the particular causes of action. Taking the easiest causes first: Alfred has shown no facts to justify exercise of jurisdiction on his second cause of action for support overcharges, his third cause of action for imposition of a constructive trust, and his fourth cause of action for money had and received. No evidence indicates when or where the incidents occurred upon which these causes of action are based.

The first cause of action for enticement of Louise was based in part on telephone calls between Edgar and Rachel in Michigan and Alfred and Louise in California. So far as Edgar and Rachel are concerned, the telephone calls must be viewed as acts done by them in Michigan, not in California. ■ It may be reasonable for a forum state to exercise jurisdiction over a nonresident who intentionally causes effects in the forum state by acts done elsewhere.[1] The effects, however, must be of a

---

[1]Restatement Second, Conflict of Laws, section 37, provides:
"Causing Effects in State by Act Done Elsewhere
"A state has power to exercise judicial jurisdiction over an individual who causes

nature that the forum state treats as exceptional and subjects to special regulation, or the nonresident must have invoked the benefits and protections of the forum's laws in causing the effects in the forum state. (*Quattrone* v. *Superior Court,* 44 Cal.App.3d 296, 306 [118 Cal.Rptr. 548]; *Cornelison* v. *Chaney, supra,* 16 Cal.3d 143.) ██ We agree with the trial court's conclusion that the telephone calls here satisfy neither of these qualifications for jurisdiction. California imposes no special regulation in this field, and in no way have Edgar and Rachel invoked the benefits and protections of California law.

Alfred points out that California would be the only state with an interest in the action for enticement of Louise. California Civil Code section 49 provides that "The rights of personal relations forbid: (a) The abduction or enticement of a child from a parent . . ." while 18 Michigan Statutes Annotated, section 25.192 makes it unlawful to file a civil cause of action based on alienation of affections. While the interest of a state in providing a forum for its residents is one factor to be considered in close cases (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143), it is not a conclusive factor. Under the tenuous circumstances of this case, it does not swing the balance in favor of jurisdiction.

The order quashing service of summons is affirmed.

Roth, P. J., and Beach, J., concurred.

---

effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable."

As noted in comment a. to Restatement Second, section 37, and cited by the Judicial Council in its comment to Code of Civil Procedure section 410.10: "So one who intentionally shoots a bullet into a state is as subject to the judicial jurisdiction of the state as to causes of action arising from the effects of the shot as if he had actually fired the bullet in the state."