[Civ. Nos. 20028, 20029, 20030. Third Dist. Apr. 9, 1981.]

WILLIAM B. RUGER, SR., Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
PATRICK HOUGHTON et al., Real Parties in Interest.

428

COUNSEL

Hoge, Fenton, Jones & Appel, John W. Appel and Michael D. McSweeney for Petitioner.

No appearance for Respondent.

Donald H. Heller for Real Parties in Interest.

OPINION

**PUGLIA, P. J.**—Petitioner William B. Ruger, Sr., (Ruger) seeks a writ of mandate directing respondent superior court to vacate its orders denying his motions to quash service of summons in three separate actions initiated respectively by real parties in interest Patrick Houghton, Conception and Stephen Sindelar, and James and Ethel Killion (plaintiffs). (Code Civ. Proc., § 418.10, subd. (c).) In the underlying actions plaintiffs seek damages against Sturm, Ruger & Company, Inc. (corporation) and Ruger individually for personal injuries allegedly caused by defects in revolvers manufactured by the corporation. Neither the corporation nor Ruger are residents of California. The corporation, however, has submitted to California jurisdiction, but Ruger, its presi-

dent, director and majority shareholder, contends the court lacks jurisdiction over him personally. We shall grant the requested relief.

Ruger has at all times pertinent been a resident of either Connecticut or New Hampshire; he was personally served with summons outside California. California's long-arm statute invests its courts with personal jurisdiction over a litigant on "... any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10; see also *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264]; *Davis* v. *Superior Court* (1976) 62 Cal.App.3d 484, 487 [133 Cal.Rptr. 115].) In effect, this statute extends jurisdictional power over Ruger to the fullest extent permitted by the due process clause of the United States Constitution. (*Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 91 [56 L.Ed.2d 132, 140-141, 98 Cal.Rptr. 1690]; *World-Wide Volkswagen Corp.* v. *Woodson* (1980) 444 U.S. 286 [62 L.Ed.2d 490, 497, 100 S.Ct. 559, 580].) Since there is no controversy as to adequacy of notice (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306, 313-314 [94 L.Ed. 865, 872-873, 70 S.Ct. 652]), the due process question at issue here is whether Ruger has sufficient "minimum contacts" with California such that the maintenance of the actions against him do not "... offend traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057]; *Shaffer* v. *Heitner* (1977) 433 U.S. 186, 212 [53 L.Ed.2d 683, 703, 97 S.Ct. 2569]; *Kulko, supra,* 436 U.S. at pp. 91-91 [56 L.Ed.2d at pp. 140-141]; *World-Wide, supra,* 444 U.S. at p. 292 [62 L.Ed.2d at p. 498].)

■ As a general rule, due process requires the contacts (or relationship) between a nonresident defendant and the forum state to be such that it is fair and reasonable to require a defendant to submit to suit in the distant forum. (*World-Wide, supra,* 444 U.S. at p. 292 [62 L.Ed.2d at p. 498]; *Cornelison, supra,* 16 Cal.3d at p. 147.) "Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute [citation]; the plaintiff's interest in obtaining convenient and effective relief [citation] ... the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies [citation]." (*World-Wide, supra,* 444 U.S. at p. 292 [62 L.Ed.2d at p. 498].) "Like any

standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." (*Kulko, supra,* 436 U.S. at p. 92 [56 L.Ed.2d at p. 141], citing *Hanson* v. *Denckla* (1958) 357 U.S. 235, 246 [2 L.Ed.2d 1283, 1293, 78 S.Ct. 1228].) The burden rests on plaintiffs to prove those facts establishing the requisite relationship for the exercise of personal jurisdiction. (*Shearer* v. *Superior Court* (1977) 70 Cal.App.3d 424, 430 [138 Cal.Rptr. 824]; *Messerschmidt Development Co.* v. *Crutcher Resources Corp.* (1978) 84 Cal.App.3d 819, 825 [149 Cal.Rptr. 35].)

█ We turn to the facts of the present case. The plaintiffs are all residents of California who incurred injuries within this state by the accidental discharge of old-model, single-action revolvers manufactured by defendant corporation. This type of revolver is sold within California. The corporation is principally located in Connecticut, has a branch plant in New Hampshire, and is incorporated under the laws of Delaware. The corporation does not directly engage in business within California but markets its products nationwide through distributors. Mr. Ruger is the president, a 55 percent shareholder, and an employee of the corporation; he has at no time conducted any business either as an individual or on behalf of his corporate employer within the State of California, owns no property within the state and has visited the state only a few times. Thus, any California jurisdiction over Ruger must rest upon the effects in this state of his acts or omissions elsewhere. (See 16 Cal.Jur.3d, Courts, § 56, p. 107.)

The single-action, old-model revolvers involved in plaintiffs' accidents were neither manufactured nor sold by Ruger individually. Neither Ruger nor the corporation owns any significant patents related to these old-model revolvers. Their design closely followed that of the famous Colt "Peacemaker." As an employee, Ruger modified the Colt design only as to the type of spring and the location of the firing pin, changes unrelated to the alleged defect associated with the accidental firings which injured plaintiffs.

Plaintiffs base their claim of jurisdiction over Ruger, not solely on his position as officer, shareholder, and employee of the corporation, but also on his "wilful and calculated" acts and omissions. (See *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 785 [157 Cal.Rptr. 392, 598 P.2d 45].) They assert that Ruger was the responsible corporate

employee who refused to warn of known inherent dangers in the corporation's product, failed to place known safety devices on the product, and failed either to warn of or to initiate a recall of the inherently dangerous product.[1]

Respondent court did not base its assertion of jurisdiction over Ruger on his relationship with the corporation. Instead, the court founded personal jurisdiction on his role as "designer" of the old-model revolver which caused plaintiffs' injuries. The trial court held that Ruger was the person who set his product design "into the stream of commerce knowing or having reason to know" it would reach California.

There is no substantial evidence to support the court's finding that Ruger was the "designer" of the allegedly defective product. (See *Messerschmidt Development Co.* v. *Crutcher Resources Corp., supra*, 84 Cal.App.3d at p. 825.) As indicated, whatever design features of the old-model revolver are arguably attributable to Ruger have no relation to the alleged defect causing the complained-of injuries. Nor has Ruger received any royalties or other direct economic benefit from any design activities which would indicate a personal interest in the sale of the revolver in California. (Cf. *Davis* v. *Superior Court, supra*, 62 Cal.App.3d at p. 489; see also *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 902 [80 Cal.Rptr. 113, 458 P.2d 57]; *World-Wide Volkswagen Corp.* v. *Woodson, supra*, 444 U.S. 286 [62 L.Ed.2d at p. 502].)

Assuming arguendo that Ruger was the actual designer of the product in question, his conduct with respect to that product does not constitute the type of purposeful activity which could reasonably be foreseen to have effects in California which would subject him personally to suit within this state. (See *World-Wide, supra*, 444 U.S. 286 [62 L.Ed.2d at pp. 501-502]; *Buckeye Boiler, supra*, 71 Cal.2d at pp. 900-903; *Hanson* v. *Denckla, supra*, 357 U.S. 235, 253 [2 L.Ed.2d 1283, 1298].) All of his acts outside California with respect to the allegedly defective revolver were on behalf of the corporation and not in his indi-

---

[1]Between 1970 and 1972, Ruger designed and patented a "transfer bar" safety device for single-action revolvers which provides protection against their accidental discharge. Incorporating this safety device, a new-model, single-action revolver was first manufactured by the corporation in 1973; use of this new model is not involved in the instant litigation. In at least two of the three consolidated cases under review, the old-model revolver causing the injury was alleged to have been manufactured sometime in 1972.

vidual capacity.[2] It was the corporation, not Ruger individually, which in fact introduced the revolver as well as its design into the stream of commerce. (Cf. *Jones Enterprises, Inc.* v. *Atlas Service Corporation* (9th Cir. 1971) 442 F.2d 1136 [corporation which placed *its* designs into the stream of commerce held subject to jurisdiction in another state].) Since the assertion of personal jurisdiction over a foreign corporation has been stretched to constitutional limits where, as here, the only contact shown is that the corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State" (*World-Wide, supra,* 444 U.S. at p. 298 [62 L.Ed.2d at p. 502]; *Buckeye Boiler, supra,* 71 Cal.2d at pp. 900-907), we conclude that California's assertion of jurisdiction over corporate employee Ruger derivative only from such minimal corporate activity overreaches constitutional limits.

Moreover, Ruger's corporate position as officer, shareholder, and employee does not supply the missing link for a constitutionally cognizable relationship with California supplying the basis for personal jurisdiction. For personal jurisdiction to lie, the character, quality, and nature of Ruger's activity must bear a substantial relationship to the causes of action beyond that derived solely from his official position with the corporation. (See *Lundgren* v. *Superior Court* (1980) 111 Cal.App.3d 477 [168 Cal.Rptr. 717]; *Flick* v. *Exxon Corp.* (1976) 58 Cal.App.3d 212, 217-218 [129 Cal.Rptr. 760].)[3] Here, piercing the corporate veil through application of the "alter ego" doctrine is unavailable since the corporation obviously has an existence independent from that of Ruger. (Cf. *Harris* v. *Arlen Properties, Inc.* (1969) 256 Md. 185 [260 A.2d 22, 29-30]; see also generally *Associated Vendors, Inc.* v. *Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 836-837 [26 Cal.Rptr. 806].)

---

[2]Indeed, federal courts applying Pennsylvania law uniformly have held that a nonresident's transaction of business *within* a forum state only on behalf of a corporation is an insufficient basis for personal jurisdiction. (*Testa* v. *Janssen* (W.D.Pa. 1980) 482 F.Supp. 1195, 1199; *Spelling-Goldberg Prod.* v. *Bodek and Rhodes* (E.D.Pa. 1976) 452 F.Supp. 452; *Miller* v. *American Telephone & Telegraph Company* (E.D.Pa. 1975) 394 F.Supp. 58, 62-63, affd. (3d Cir. 1976) 530 F.2d 964.)

[3]*Compare Hi Fashion Wigs, Inc.* v. *Peter Hammond Ad., Inc.* (1973) 32 N.Y.2d 583 [347 N.Y.S.2d 47, 50-51, 300 N.E.2d 421] [personal jurisdiction where president and half-owner of corporation personally guaranteed payment of the contract obligation of the corporation and personally delivered the guarantee while in forum state]; *Mr. Steak, Inc.* v. *Dist. Court, etc.* (1978) 194 Colo. 519 [574 P.2d 95] [jurisdiction similarly where president of corporation executed agreement in forum state and signed it as individual guarantor]; *McGuire* v. *Brightman* (1978) 79 Cal.App.3d 776, 779, 789 [145 Cal.Rptr. 256] [personal jurisdiction over president and employee of a corporation who gathered information while within the forum state and used this information to

Accordingly, it is unreasonable under due process standards that Ruger should personally answer as a defendant in actions brought in this state against his corporate employer. No matter how egregious his alleged conduct, plaintiffs cannot here extrapolate precepts of liability into precepts of jurisdiction without offending traditional notions of fair play and substantial justice.

Let a writ of mandate issue directing respondent superior court to vacate its orders denying defendant Ruger's motions to quash service on him individually in case Nos. 284915, 281940, and 281963, and to enter new orders quashing such service of process.

Paras, J., and Evans, J., concurred.

---

write a libelous article for the corporation's newspaper]; *State* v. *Advance Marketing Consultants, Inc.* (1975) 66 Wis.2d 706 [225 N.W.2d 887] [in action for misleading advertising, personal jurisdiction over corporate officer who placed advertisements and contacted persons regarding those advertisements in the forum state].)