[No. B010323. Second Dist., Div. Four. June 25, 1985.]

LAWRENCE F. MIHLON et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RICHARD F. MURKEY, Real Party in Interest.

**COUNSEL**

Lawrence F. Mihlon and Sally C. Andrews, in pro. per., for Petitioners.

No appearance for Respondent.

Richard F. Murkey, in pro. per., for Real Party in Interest.

**OPINION**

**WOODS, P. J.**—By petition for writ of mandate pursuant to Code of Civil Procedure section 418.10, subdivision (c), two nonresident individual defendants seek review of an order denying their motions to quash service of summons on the ground that all their alleged wrongful conduct relative to the underlying action was in their official capacities as either officers or corporate counsel of a foreign corporation and such conduct may not be the basis for imposition of jurisdiction over them individually.

The determinative question to be resolved is whether corporate counsel for a foreign corporation may be subjected to California personal jurisdiction as an individual where it is alleged that counsel conspired with others to cause and assist the corporate client to tortiously breach a contract.

This issue has not been definitively addressed by reported California decisions. The material facts submitted in support and in opposition to the motion to quash are meager and vague but do create some factual dispute.

In October 1984, real party, California Attorney Richard F. Murkey (Murkey), filed an unverified complaint alleging that defendants (particularly Sally Andrews) and other persons had conspired to "induce and assist" Mihlon Group, Ltd., (a foreign corporation) and Lawrence Mihlon (Mihlon) to breach their attorney retainer agreements with Murkey. Murkey had been retained in a pending California action which was settled without advising Murkey, their attorney of record, and without paying Murkey his 50 percent contingency fee which he claims amounts to $700,000.

The complaint alleges that petitioners are members of the board of directors, officers and shareholders of Mihlon Group, Ltd., and that the corporation, which is in bankruptcy in Maryland, is petitioners' "under-capitalized" alter ego.

On these allegations, Murkey seeks recovery of damages upon theories of interference with contract, interference with prospective business advantage, and intentional and negligent misrepresentation. Service of summons was affected outside of this state.

Defendant petitioners appeared specially and moved to quash service of summons contending that their activities within California and their other contacts with California in relation to plaintiff's action were in performance of their duties as officers, directors or corporate counsel for the foreign

corporation and that such conduct is not a valid basis for jurisdiction over them as individuals.[1]

The affidavit submitted by Sally Andrews (Andrews) in support of the motion to quash states that she is a resident of the state of Maryland who has never done business in California, has never owned property here, and has never entered an appearance in any legal proceeding here in her individual or representative capacity. It states that as of 1983 she has served as "counsel and agent" and as "director, vice president and secretary" of Mihlon Group, Ltd. She is not a shareholder of Mihlon Group, Ltd. The critical averments are: "My contacts with California *in connection with this cause of action* were made *in my role as corporate officer and counsel.* I received and reviewed documents, advised as to the nature of their contents, suggested revisions, and transmitted drafts and executed documents back to California. I also placed and received telephone calls to and from California to facilitate the performance of my function. I performed these actions in the State of Maryland and in the District of Columbia. ██ ██ ██ ██ While on vacation in California I attended Mr. Mihlon's deposition, and on one or two other vacations attended his meetings with the producers to discuss the production [Mihlon Group, Ltd., was attempting to sell screen rights to producers in California]."[2] (Italics added.)

The affidavit submitted by Mihlon in support of his motion avers a general absence of personal contact with California. He states that he is a resident of the state of Maryland who owns no California property, has no personal business here, and has "never entered an appearance in any judicial proceeding in the State of California in [his] individual capacity as either a plaintiff or a defendant." He is a 51 percent shareholder, president, and a director of Mihlon Group, Ltd., a Delaware corporation. He states that the corporation was formed in 1980 with $10,000 initial capital contribution.

Mihlon's general averment that he has "never done business in . . . corporate form in California" is contradicted by his specific acknowledgement (and the acknowledgement by Andrews) that, at an unspecified time, Mihlon came to California and engaged in negotiations with prospective producers concerning sale of the movie script owned by Mihlon Group, Ltd. He states that the resulting contract of sale was executed by him in Maryland.

With regard to the Murkey action, Mihlon states that in May or June of 1982, Murkey sent him letters soliciting legal representation of Mihlon and

[1]Defendants requested that hearing on their motions be by "telephonic conference." We are not advised of how the hearing was conducted nor whether it was reported.

[2]In a purported reply brief to Murkey's opposition in this writ proceeding, Andrews attempts to submit a new declaration of facts explaining her activities in California. This is an improper attempt to present new evidence that was not before respondent when it ruled.

Mihlon Group, Ltd., in a California action by CBS Corporation against Mihlon Group, Ltd., concerning production rights to a movie script. Mihlon executed the enclosed retainer agreements and returned them to Murkey by mail. Copies of these retainer agreements show that Mihlon executed one in his individual capacity and two on behalf of Mihlon Group, Ltd., in his capacity as president thereof. Mihlon appeared at a deposition in the CBS action in California.

Murkey filed opposition[3] consisting solely of argument, without citation to authority. This argument attributed all of Mihlon's and Andrew's acts to them personally and did not acknowledge that the defendants' corporate capacities might render these acts immaterial to the question of jurisdiction over them as individuals.

The competent, material portions of Murkey's declaration states that he "was approached in Los Angeles" to represent Mihlon and Mihlon Group, Ltd., in a contract dispute with CBS, Inc., in California, concerning a movie production of a script owned by Mihlon Group, Ltd., that he "was the *only* attorney of record for Mihlon Group, Ltd., and Lawrence Mihlon himself individually" in the resulting prior action, Los Angeles Superior Court case No. C 416686. (Italics in original.)[4] Murkey requested respondent to take judicial notice of the contents of that case file, but our record is silent as to whether respondent took judicial notice of all or any of the facts contained therein. Although neither his clients nor counsel for CBS so notified Murkey, he eventually learned that there had been a full settlement of the CBS action without his participation. When Murkey demanded his contingency fee, petitioner Mihlon "fired" him.

Respondent denied petitioners' motion on the stated grounds: "Motion of defendant Lawrence F. Mihlon . . . DENIED—insufficient showing of lack of minimum contacts. Moving party retained plaintiff, a California attorney to represent his interest and the interests of his corporation in california [*sic*]. [¶] Motion of defendant Sally C. Andrews . . . DENIED—moving party served as counsel for the corporation—this exceeds any role as a mere officer/director and she attended deposition in California, sufficient contacts regarding this action. [¶] Insufficient argument by both parties for inconvenient forum."

Mihlon and Andrews filed a joint petition for writ of mandate with this court. We issued the alternative writ with respect to petitioner Andrews

---

[3]The declaration filed by Murkey in opposition is replete with immaterial, conclusionary, and argumentative statements.

[4]Superior court case No. C 416686 does not reflect that Lawrence Mihlon was a party to this action nor was he represented individually in this action by Mr. Murkey.

only because, as will be explained, Mihlon did not demonstrate a prima facie case for relief and Andrews presents a novel issue as to personal jurisdiction over nonresident corporate counsel based upon legal services rendered to a client foreign corporation.

## DISCUSSION

### I

Resolution of the question of personal jurisdiction must be accomplished under certain evidentiary rules. ■ First, when jurisdiction is challenged by a nonresident defendant, the burden of proof is upon the plaintiff to demonstrate that "minimum contacts" exist between defendant and the forum state to justify imposition of personal jurisdiction. (*Shearer* v. *Superior Court* (1977) 70 Cal.App.3d 424, 430 [138 Cal.Rptr. 824].) The plaintiff has the right to conduct discovery with regard to the issue of jurisdiction to develop the facts necessary to sustain this burden. (*1880 Corp.* v. *Superior Court* (1962) 57 Cal.2d 840, 843 [22 Cal.Rptr. 209, 371 P.2d 985].) ■ Second, an unverified complaint has no evidentiary value in determination of personal jurisdiction (*Sheard* v. *Superior Court* (1974) 40 Cal.App.3d 207, 212 [114 Cal.Rptr. 743]), but such pleading has limited cognizable significance as "a material fact, in that it defines the cause of action, the nature of which has some bearing upon the decision whether it is fair and reasonable to require the nonresident parties to appear and defend in this state. But the pleader has no burden of proving the truth of the allegations constituting the causes of action in order to justify the exercise of jurisdiction over nonresident parties." (*Lundgren* v. *Superior Court* (1980) 111 Cal.App.3d 477, 485 [168 Cal.Rptr. 717].) The plaintiff need only present facts demonstrating that the conduct of defendants related to the pleaded causes is such as to constitute constitutionally cognizable "minimum contacts." (*Ibid.*) ■ Fourth, where there is conflict between the declarations of the parties, the explicit and implicit resolution thereof by the trial court may not be reevaluated on appellate review. (*Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349].) ■ Finally, we are not permitted to consider evidence that was not before the trial court. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 218, 219, pp. 4208, 4209.)

■ Given these evidentiary rules, the fundamental principles of personal jurisdiction which we must apply to the factual situation revealed by the evidence is set forth in *Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147-148 [127 Cal.Rptr. 352, 545 P.2d 264]:

". . . The general rule is that the forum state may not exercise jurisdiction over a nonresident unless his relationship to the state is such as to make the exercise of such jurisdiction reasonable. [Citations.]

"If a nonresident defendant's activities may be described as 'extensive or wide-ranging' [citation] or 'substantial . . . continuous and systematic' [citation], there is a constitutionally sufficient relationship to warrant jurisdiction for all causes of action asserted against him. In such circumstances, it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.

"If, however, the defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Thus, as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend. The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction. [Citations.]" (Fn. omitted.)

## II

■ First, we will explain why these principles do not support the claim of petitioner Mihlon. The evidence shows that although Mihlon acted in his capacity as president and director of Mihlon Group, Ltd., it also shows that he acted in his capacity as an individual with the intent to do business and litigate in California state courts and to generally benefit from the protection of the laws of California.

It is undisputed that Mihlon retained plaintiff attorney Murkey, who was representing the Mihlon Group, Ltd. corporation, to represent him as an individual in California concerning the same contractual dispute with CBS, Inc. This act by Mihlon in furtherance of his interests as an individual constitute sufficient purposeful availment of the protection of California law and California activity related to Murkey's underlying causes of action to render limited California jurisdiction over Mihlon reasonable.

Although respondent's minute order suggests that the burden of proof was incorrectly placed upon defendant Mihlon to disprove the existence of "minimum contacts," the evidence of record is clearly sufficient to sustain plain-

tiff's burden of demonstrating that such contacts exist. We also point out that petitioners have not advised us whether a reporter's transcript of the hearing on their motion exists. A transcript would enable us to verify that respondent applied an incorrect burden of proof. On the record presented for review, we cannot conclude that respondent erred in denying Mihlon's motion to quash.

### III

We turn now to consideration of personal jurisdiction over petitioner Andrews.

It is not seriously disputed that if all the acts attributed to Andrews concerning her efforts to "induce and assist" the foreign corporation to tortiously breach its contract with Murkey were done in her capacity as an individual she would reasonably be subject to California jurisdiction. (*Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228].) ■ ■■■ In light of causes of action characterizing Andrews' activity as tortious, Andrews' own affidavit concedes that she participated in settlement negotiations with CBS, Inc., on behalf of her corporate client, by acts and correspondence from outside California which she intended or reasonably should have known would effect a settlement of that action, without knowledge of nor authorization by the corporation's California attorney of record and without payment of the attorney's fee her client had agreed to pay.[4]

■ The real question is whether corporate counsel for a foreign corporation is acting for or as the corporation so as to render counsel's performance of duties in that official capacity irrelevant for purposes of demonstrating minimum contacts as an individual.[5] Otherwise stated, does cor-

---

[4]The evidence does not support the conclusion that Andrews' presence at the California deposition of Mihlon in the prior CBS action constitutes an act in her individual capacity. She was a director, the secretary and corporate counsel for the corporation who was a party to that action and Mihlon was the president of that corporate party. Accordingly, there is no showing that Andrews was acting in her individual capacity or in furtherance of her own individual interests by appearing at the deposition.

[5]It is important to point out that our inquiry does not extend to the substantive issue of whether plaintiff states a valid cause of action against the individual defendants or whether he could prevail on the merits of his action. We need not decide this different issue of liability and we direct our analysis exclusively *to whether a sufficient nexus is demonstrated* between the nature of the action set forth in the complaint and the evidentiary showing of defendants' conduct within or having an effect within this state. (See *Shearer* v. *Superior Court, supra,* 70 Cal.App.3d at p. 430; *Foster* v. *Mooney Aircraft Corp.* (1977) 68 Cal.App.3d 887, 894 [137 Cal.Rptr. 694]; *Lundgren* v. *Superior Court, supra,* 111 Cal.App.3d at p. 485; *Inselberg* v. *Inselberg* (1976) 56 Cal.App.3d 484, 489 [128 Cal.Rptr. 578].)

porate counsel stand in the same position as corporate officers and directors in this regard?

Consideration of the unique circumstance of corporate entities and the functions of corporate officers and directors, and comparison of the cases concerning personal jurisdiction as to officers and directors with the cases concerning personal jurisdiction over corporate employees, requires the conclusion that corporate counsel should be treated as employees or independent contractors are treated for jurisdictional purposes.

 Although it appears that this question has not been answered in California as to corporate counsel, it is well established by California case law that for jurisdictional purposes the acts of corporate officers and directors, in their official capacities, are acts exclusively of (*qua*) the corporation, and are thus not material for purposes of establishing minimum contacts as to individuals. (*Shearer* v. *Superior Court, supra,* 70 Cal.App.3d at p. 430; *Arnesen* v. *Raymond Lee Organization, Inc.* (1973) 31 Cal.App.3d 991, 996 [107 Cal.Rptr. 744]; *Ruger* v. *Superior Court* (1981) 118 Cal.App.3d 427, 433 [173 Cal.Rptr. 302].) Implicit in this principle is the consideration that corporations are separate legal entities that cannot speak or act without their designated officers and directors. Accordingly, acts performed by individuals in such official capacities may not reasonably be attributed to them as individual acts creating personal jurisdiction.

 California case law concerning personal jurisdiction over employees of foreign corporations does not expressly state the rule that employees are to be treated differently than officers and directors, but it is clear that employees have not received the same "official capacity" immunity that officers and directors receive. The implicit basis for different treatment is because employees are not necessary for the corporation to act. Employees merely perform services for the corporation.

In *Ruger* v. *Superior Court, supra,* 118 Cal.App.3d 427, defendant was the president, director, majority shareholder, and an employee of a foreign corporation that designed replica antique guns. He was held not personally subject to California jurisdiction in a California plaintiff's products liability action based on an exploding gun, because his design modifications to the gun had no relation to the alleged injurious defects. The *Ruger* court pointed out that all of the defendant's acts as president and director were performed "on behalf of the corporation and not in his individual capacity. It was the corporation, not Ruger individually, which in fact introduced the revolver as well as its design into the stream of commerce. [Citation.]" (*Id.,* at pp. 432-433; fn. omitted.) The *Ruger* court concluded: "California's assertion of jurisdiction over corporate employee Ruger derivative only from

such minimal corporate activity overreaches constitutional limits." (*Id.*, at p. 433.) The *Ruger* discussion clearly suggests the view that an employee would be subject to individual jurisdiction if his actions had had a sufficient nexus to the cause of action alleged.

In *Davis* v. *Superior Court* (1976) 62 Cal.App.3d 484 [133 Cal.Rptr. 115], personal jurisdiction over nonresident expert consultants who had sold the patent for an injurious device to the codefendant foreign corporation, and who had a personal interest in promoting sales of the device by the corporation by reason of their royalty interests, were held subject to personal jurisdiction in California in a products liability action. The three individual defendants had conceived and developed the device and sold the patent to A. H. Robbins Co. and retained royalty rights. The corporation retained the three individuals as salaried consultants and two of them traveled to California to promote sales of the corporation's product. The third did not perform acts within California but published nationally distributed articles promoting the product and assisted in the corporation's national sales campaign from outside California. The acts of promoting the sale of the product, with foreseeable injurious effects, for increased royalties, was held sufficient to sustain personal jurisdiction.

The reliance in *Davis* upon the corporate employees having a personal royalty interest in the injurious product does not necessarily require a similar personal economic interest in our case. First, *Davis* involved a products liability action where sales promotion of a negligently designed product was alleged. In contrast, here we have an alleged intentional tort intended to cause, or foreseeably causing, injury in California. It thus does not follow that a personal economic interest must be demonstrated here in addition to intentional wrongful conduct in an individual capacity. Second, it is not certain that without the direct personal economic interests, the *Davis* court would have found that the employees' negligence in designing the device was not an act in their individual capacities. It is significant that the *Davis* situation concerned the alleged negligent design of the product prior to the individual designers becoming employed by the corporation. Thus, it could not have been said that the employees were acting for the corporation or in its interests when they invented the device and sold it to the corporation in contemplation of nationwide distribution. Under this analysis, the inventors would presumably be subject to jurisdiction and potential liability irrespective of their promotional assistance after becoming employees.

Third, in California, the criterion for personal jurisdiction over a foreign state manufacturer is "purposeful economic activity" within the state. This is demonstrated "whenever the purchase or use of its product within the state *generates gross income* for the manufacturer and is *not so*

*fortuitous or unforeseeable* as to negative the existence of an intent on the manufacturer's part to bring about this result. [Citations.]'' (Italics added.) (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 902 [80 Cal.Rptr. 113, 458 P.2d 57].) ▉ Thus, in the *Davis* products liability case, it appears that the finding of the individual defendants' personal royalty interests in the product and their promotion of sales within California was necessary to the exercise of personal jurisdiction over them irrespective of the question of their acts as corporate employees.

In *Shearer* v. *Superior Court, supra,* 70 Cal.App.3d at pages 429-430, the court held that, absent a direct showing by plaintiff that the officers of a nonresident corporation acted in other than their official capacities on behalf of the corporation in dealing with plaintiff in California, the officers may not be subjected to California jurisdiction personally. The court pointed out that although the verified complaint, in that case, alleged tortious interference with the corporation's contract with plaintiff, there were no competent allegations in the complaint, or in plaintiff's declaration, to demonstrate such tortious conduct by individual defendants within or having an effect within this state.

A helpful parallel to our situation was addressed in *McGuire* v. *Brightman* (1978) 79 Cal.App.3d 776 [145 Cal.Rptr. 256], where the president of a California newspaper publishing corporation authored an article that was published by the paper and was libelous of a South Dakota resident. In the resulting libel action in South Dakota, the defendant author-president challenged personal jurisdiction on the ground that only the corporation published the article and he could not be subjected to personal jurisdiction for the act of the corporation. It was there held that under principles of libel law, all persons who take a responsible part in the publication are liable for the defamation. Even if the individual defendant could eventually avoid liability for his acts, his status as individual author (employee), rather than corporate publisher, does not create a legal distinction allowing him to avoid personal jurisdiction in an action seeking to impose such liability. (*Id.,* at p. 789.)

The rationale of these cases requires the conclusion that corporate counsel is not entitled to the same "official capacity" shield from personal jurisdiction as are corporate officers and directors. Because a corporation is a separate legal entity that necessarily must have persons act for it, persons functioning in their official capacities as officers and directors may not reasonably be subjected to personal jurisdiction for their actions *qua* the corporation. This rationale, however, does not extend to an attorney serving a corporation as corporate counsel because that counsel merely provides legal counsel and services, and does not "speak for" or act *qua* the cor-

poration in the same manner that officers and directors do. Corporate counsel may advise the corporation (its officers and directors) as to the legal consequences of business conduct, but it is the corporation, through its officers and directors, that acts in its own capacity upon such advice. Similarly, corporate counsel might draft contracts and correspondence for the corporation, but the execution of those contracts and corporate authorization or ratification must be performed by appropriate corporate officers or directors. In short, counsel for a corporation acts for or on behalf of the corporation only in the same manner as counsel would act for or on behalf of a client who is an individual.

The capacity of corporate counsel, whether in-house or independent counsel, is analogous to that of accountants providing services as professional employees of or independent contractors for the corporation. It is not subject to serious dispute that if accountants provide fraudulent financial documents on behalf of their corporate client, knowing or reasonably foreseeing direct injury to residents of another state, the accountants should be subjected to personal jurisdiction as joint tortfeasors.

It follows that corporate counsel should be treated for purposes of personal jurisdiction in the same manner as employees of or independent contractors for the corporation rather than as officers or directors. An intentionally tortious act of the corporation would confer personal jurisdiction over participating corporate counsel where knowledge of the wrongful nature of the corporation's acts is alleged. This conclusion is consistent with the consideration that there is no good reason for treating counsel advising corporations differently than counsel advising individual clients for purposes of personal jurisdiction.

Given this conclusion, despite the sparse showing made by plaintiff below, it appears that respondent having elected to fully credit all plaintiff's competent averments and all reasonable inferences that may be derived therefrom, did not err in determining that personal jurisdiction is justified by that portion of defendant Andrews' alleged tortious conduct outside California performed in her capacity as corporate counsel.

We are mindful that the ultimate constitutional criterion of the permissible exercise of personal jurisdiction is the reasonableness of such exercise under all the circumstances. Accordingly, this holding is limited to corporate counsel's intentional tort and is not intended to extend to a situation where corporate counsel is merely negligent or unknowing in providing its client with information, advice or documents that contribute to the client's breach of contract.

The alternative writ is discharged and the peremptory writ is denied.

McClosky, J., and Nelson, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.