[No. B034098. Second Dist., Div. Seven. Feb. 15, 1989.]

JAMES E. BROWN et al., Plaintiffs and Appellants, v.
JAMES R. WATSON, JR. et al., Defendants and Respondents.

**COUNSEL**

Jonathan P. Milberg and Michael Norman Saleman for Plaintiffs and Appellants.

Hollins & Rice, Byron S. Hollins and Andrea Lynn Rice for Defendants and Respondents.

**OPINION**

**LILLIE, P. J.**—Plaintiffs appeal from an order granting the motion of defendants James Watson, Bray & Watson and Clifford Gorman to quash service of summons for lack of jurisdiction and dismissing plaintiffs' actions as to said defendants.[1]

### FACTS

James Brown and Sarah Crummie brought a legal malpractice action against two groups of defendants: Harold Gamer, James Tipps and Gamer & Tipps, residents of California licensed to practice law in that state and a California law corporation, respectively (California attorneys); and J. Monte Bray, James Watson, Clifford Gorman and Bray & Watson, residents of Texas licensed to practice law in that state and a Texas law partnership, respectively (Texas attorneys).[2] The complaint alleged: In March 1980, in Los Angeles, plaintiffs employed the California attorneys to represent plaintiffs in connection with personal injuries sustained by plaintiff Brown, and the wrongful death of plaintiff Crummie's son, in an automobile accident in Texas on March 7, 1980. In July 1980 the California attorneys filed personal injury and wrongful death actions on behalf of plaintiffs in the United States District Court for the Southern District of Texas. Jurisdiction in such actions was based upon diversity of citizenship between plaintiffs and

---

[1] The order is appealable. (Code Civ. Proc., §§ 581d, 904.1, subds. (a), (c).)

[2] Plaintiffs Brown and Crummie filed separate but essentially identical actions that were consolidated for the purpose of the hearing on motion to quash service of summons.

defendants, the complaints alleging that plaintiffs were citizens of California while defendants were noncitizens of California. The United States District Court determined that some of the defendants were citizens of California and in January 1981 dismissed the actions as against all defendants because of lack of subject matter jurisdiction arising from the lack of diversity of citizenship between plaintiffs and defendants. After dismissal of the federal actions the California attorneys associated the Texas attorneys as counsel for plaintiffs for the purpose of bringing an action in the state court of Texas against the defendants named in the federal suit. Such an action was filed June 3, 1981, but the lawsuit was dismissed as to all defendants because of the failure of plaintiffs' attorneys to file and serve summons and complaint within the two-year period provided by the law of Texas; additionally, defendants alleged that the prior dismissal of the federal actions acted as a bar to the state action under principles of res judicata pursuant to Texas law. The Texas state court action was fully and finally dismissed October 31, 1986. The California attorneys were negligent in having filed the actions in federal court when no diversity of citizenship existed; the filing of the federal actions delayed the filing of the action in the Texas state court and created a res judicata effect in the subsequent state action which was a ground of its dismissal. All defendants failed to exercise reasonable care, skill and diligence in representing plaintiffs in the Texas action. As a result of such negligence plaintiffs' causes of action are barred and each plaintiff thereby has sustained damages in excess of $5 million.

Texas attorney defendants Watson, Gorman and Bray & Watson appeared specially and moved to quash service of summons on the ground the court lacks personal jurisdiction over them. (Code Civ. Proc., § 418.10.) The declarations in support of the motion stated: Defendants Watson and Gorman are attorneys licensed to practice law in Texas; until it ceased operations in 1984 Bray & Watson was variously a professional law corporation and a Texas law partnership. Neither Watson, Gorman nor Bray & Watson at any time has applied for admission to the State Bar of California. Further, at no time has any of the defendants done any of the following: held a business license issued by any government agency in California; qualified to do business in California or applied for such qualification; filed a California income tax or sales tax return, or paid or collected such taxes; had a telephone listing or an office in California; advertised or solicited business in California; maintained a residence or owned real property in California; or maintained a bank account in California. When Bray & Watson was associated in as counsel for plaintiffs, Gorman was an attorney with that firm and was assigned principal responsibility for handling the Texas action on behalf of plaintiffs. In February or March 1982 Gorman left the firm of Bray & Watson and started his own practice, taking plaintiffs' file with him. Thereafter, Bray & Watson had no contact with Gorman

or with plaintiffs' case. Gorman never came to California to meet with plaintiffs and had only occasional contact with them through telephone calls and correspondence.

In opposition to the motion to quash plaintiffs submitted their declarations and that of their attorney. The declarations of plaintiffs stated: Plaintiffs retained the California attorneys to represent them in actions for personal injuries (plaintiff Brown) and wrongful death (plaintiff Crummie) sustained in an automobile accident in 1980. When the firm was retained, defendant Gamer told plaintiffs that he would be bringing the actions in Texas and it might be necessary for him to associate a Texas law firm to assist the California attorneys in the prosecution of the actions. Plaintiffs were given a retainer agreement to sign; in that agreement the California attorneys reserved the right to associate counsel in the matter at no extra expense to plaintiffs. Plaintiffs understood that any Texas attorney associated in the case would enter into a "fee split" arrangement with the California attorneys. Throughout the litigation plaintiffs furnished information to the California attorneys who passed it on to the Texas attorneys. The California attorneys also relayed to plaintiffs information received from the Texas attorneys. During the course of the litigation plaintiffs had telephone conversations with the Texas attorneys. Plaintiffs also had meetings with the California attorneys in California where information was exchanged among plaintiffs, the California attorneys and the Texas attorneys. Attached as exhibits to the declaration of Michael Saleman, an attorney for plaintiffs, were copies of correspondence between the California attorneys and the Texas attorneys which included discussion of association of the Texas attorneys with the California attorneys for representation of plaintiffs, transmittal of information helpful in the lawsuit by the California attorneys to the Texas attorneys, and reports on the progress of the litigation from the Texas attorneys.

The trial court granted the motion to quash service of summons[3] and thereafter signed and filed an order quashing service and dismissing plaintiffs' legal malpractice actions as to defendants Watson, Gorman and Bray & Watson. Plaintiffs appeal from the order.

DISCUSSION

Under Code of Civil Procedure section 410.10, a California court may exercise jurisdiction over nonresident defendants "on any basis not inconsis-

---

[3] The minute order granting the motion states: "All of the events leading to the federal and state cases filed by plaintiff [*sic*] occurred in Texas. Only the fortuity of a California plaintiff involved in a Texas accident warrants attempt to invoke jurisdiction here. Local contact with California lawyers (who are subject to jurisdiction) isolated and tenuous."

tent with the Constitution of this state or of the United States." ■ This statute manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations. (*Sibley* v. *Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322].) As a general constitutional principle, a court may exercise personal jurisdiction over a nonresident defendant as long as the defendant has such minimum contacts with the forum that ". . . the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154].) Where a nonresident's activities in the forum state are extensive or wide-ranging, or substantial, continuous and systematic, there is a constitutionally sufficient relationship to warrant jurisdiction for all causes of action asserted against him, whether or not they are related to those activities. (*Secrest Machine Corp.* v. *Superior Court* (1983) 33 Cal.3d 664, 669 [190 Cal.Rptr. 175, 660 P.2d 399]; *University Financing Consultants, Inc.* v. *Barouche* (1983) 148 Cal.App.3d 1165, 1169 [196 Cal.Rptr. 484].)

The declarations of respondents Watson and Gorman establish that respondents are not licensed to practice law in California, do not advertise in California, have no telephone listing or bank account here, and do not own property, maintain a residence or have an office in this state. In short, respondents engage in no activities here, much less activities that may be described as "extensive or wide ranging" or "substantial, continuous and systematic." (*Secrest Machine Corp.* v. *Superior Court, supra,* 33 Cal.3d 664, 669.) ■ Accordingly, there is no basis for California's exercise of general jurisdiction over respondents for all causes of action.

■ Where a nonresident defendant's activities in the forum are not so pervasive as to justify the exercise of general jurisdiction over him, then jurisdiction depends upon the quality and nature of his activity in the forum in relation to the particular cause of action. (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147-148 [127 Cal.Rptr. 352, 545 P.2d 264].) "In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Thus, as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend. The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the

interests of the state in assuming jurisdiction. [Citations.]" (*Id.,* at p. 148, fn. omitted.)

Respondents did not enter California in connection with their representation of appellants in the Texas state court action. ■ However, the requisite minimum contacts of a defendant with the forum state need not arise from his physical activity in that state. (*Jones* v. *Calder* (1982) 138 Cal.App.3d 128, 133-134 [187 Cal.Rptr. 825], affd. *sub nom. Calder* v. *Jones* (1984) 465 U.S. 783 [79 L.Ed.2d 804, 104 S.Ct. 1482].) "A person need not be physically present within the state in order to transact business therein. Contact with the forum state by telephone or mail may furnish the necessary minimum contacts essential for the exercise of jurisdiction under the transaction-of-business standard." (*Waterval* v. *District Court* (Colo. 1980) 620 P.2d 5, 8, cert. den. (1981) 452 U.S. 960 [69 L.Ed.2d 971, 101 S.Ct. 3108].)

Illustrative of these principles is *Scheuer* v. *District Court* (Colo. 1984) 684 P.2d 249. There, Scheuer, a resident of New Mexico licensed to practice law in that state, was retained by Artisan, a Colorado corporation, to settle its claims against a New Mexico corporation. Scheuer conferred by telephone with Artisan's agent in Colorado concerning the corporation's financial interests which he had been retained to represent, mailed file notes and billing statements to Colorado, and received funds from Colorado for services rendered. Artisan's trustee in bankruptcy sued Scheuer in Colorado for negligence and breach of fiduciary duty in his representation of Artisan. The Supreme Court of Colorado held the courts of that state had personal jurisdiction over Scheuer, stating: "[A] non-resident defendant must commit some act by which it 'purposefully avails itself of the privilege of conducting activities' in Colorado to be the legitimate object of long-arm statute jurisdiction. . . . [¶] Based upon the allegations of the complaint and the evidence contained in the record, we conclude that Scheuer, as a consequence of his decision to represent Artisan and his conduct subsequent thereto, purposefully availed himself of the privilege of transacting business in Colorado. [Citation.] In these circumstances, Scheuer should reasonably have anticipated that he would be subject to the personal jurisdiction of Colorado's courts as a consequence of his representation of Artisan." (*Scheuer* v. *District Court, supra,* 648 P.2d at pp. 251-252; see also *Miceli* v. *Stromer* (D.Colo. 1987) 675 F.Supp. 1559; *Waterval* v. *District Court, supra,* 620 P.2d 5.)[4]

---

[4] Appellants cite *Mihlon* v. *Superior Court* (1985) 169 Cal.App.3d 703 [215 Cal.Rptr. 442], for the proposition that out-of-state attorneys who injure California residents are subject to jurisdiction here. *Mihlon* is not in point. There defendants, including counsel for a foreign corporation, allegedly conspired to induce the corporation to breach its attorney retainer agreement with plaintiff, a California resident. Defendant corporate counsel moved to quash

■ In determining the propriety of personal jurisdiction, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." (*Kulko* v. *California Superior Court* (1978) 436 U.S. 84, 92 [56 L.Ed.2d 132, 141, 98 S.Ct. 1690].) ■ Such circumstances are present in the case at bench. Respondents' contacts with the California attorneys, and with appellants personally, while not continuous, extended from 1982 to November 1986. Respondents were retained by appellants in California, through their California attorneys, to file and prosecute an action in Texas. Material and information necessary for prosecution of the action (e.g., medical evaluations of appellant Brown and photographs taken in Texas by an investigator) were in California and were furnished to respondents by the California attorneys. Respondents telephoned and corresponded with appellants and the California attorneys regarding the Texas lawsuit. Respondents' fee was to be paid through a fee-splitting arrangement with the California attorneys. As in *Scheuer,* respondents purposefully availed themselves of the privilege of conducting activities in California by their decision to represent appellants and their subsequent conduct.

One of the recognized bases for jurisdiction in California arises when the defendant has caused an effect in the state by an act or omission which occurs elsewhere. (*Sipple* v. *Des Moines Register & Tribune Co.* (1978) 82 Cal.App.3d 143, 150 [147 Cal.Rptr. 59].) This ground for assertion of jurisdiction is discussed by the Judicial Council in its comment to section 410.10 of the Code of Civil Procedure: " 'A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an omission or act done elsewhere with respect to causes of action arising from these effects, unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable. [Citations.] When jurisdiction over an individual is based solely upon such act or omission, only a claim for relief arising from such act or omission may be asserted against the individual. [Citation.]' " (*Sibley* v. *Superior Court,*

---

service of summons. Defendant's affidavit in support of the motion stated that her contacts with California in connection with the cause of action alleged were as follows: in Maryland and the District of Columbia she received and reviewed documents from California, transmitted documents back to California, placed and received telephone calls to and from California, and attended a deposition there. The question was "whether corporate counsel for a foreign corporation may be subjected to California personal jurisdiction as an individual where it is alleged that counsel conspired with others to cause and assist the corporate client to tortiously breach a contract." (*Mihlon* v. *Superior Court, supra,* 169 Cal.App.3d at p. 707.) It was held that a corporate attorney is not protected by a shield against personal jurisdiction as are corporate officers and directors when acting for the corporation and accordingly the trial court properly denied defendant's motion to quash. The holding was expressly limited "to corporate counsel's intentional tort and is not intended to extend to a situation where corporate counsel is merely negligent or unknowing in providing its client with information, advice or documents that contribute to the client's breach of contract." (*Id.,* at p. 716.)

*supra,* 16 Cal.3d 442, 446, italics omitted.) The legal malpractice complaint herein alleges that respondents were negligent in failing timely to serve and file summons and complaint within the period provided by Texas law. Such omission, which occurred in Texas, resulted in dismissal of appellants' Texas action thereby causing damage to appellants in California. In addition to their omissions outside California which caused an effect in this state, respondents had substantial contacts with California as previously outlined herein. Under these circumstances California's assumption of personal jurisdiction over respondents is constitutionally permissible.

Once it is established that the defendant has the required minimum contacts in the forum state and that the cause of action is sufficiently connected with these minimum contacts, the propriety of an assumption of jurisdiction depends upon a balancing of the inconvenience to the defendant in having to defend himself in the forum state against both the interest of the plaintiff in suing locally and the interrelated interest of the state in assuming jurisdiction. (*Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893, 899 [80 Cal.Rptr. 113, 458 P.2d 57].) ■ Some of the factors involved in this balancing process include the relative availability of evidence and the burden of defense and prosecution in one place rather than another; the interest of a state in providing a forum for its residents; the ease of access to an alternative forum; the avoidance of a multiplicity of suits and conflicting adjudications; and the extent to which the cause of action arose out of defendant's local activities. (*Cornelison* v. *Chaney, supra,* 16 Cal.3d 143, 151; *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 225-226 [1 Cal.Rptr. 1, 347 P.2d 1].)

■ In the present case much of the evidence presumably is in California since that is where appellants reside and where they are damaged by respondents' alleged legal malpractice. California is also the residence of appellants' local attorneys who, with respondents, are named as defendants in the cause of action alleging legal malpractice in the filing and prosecution of the Texas state lawsuit. Accordingly, respondents likely will be required to appear as witness in connection with their role in such malpractice and thus will be present in California regardless of whether a California court assumes jurisdiction over them as defendants. Appellants have commenced a legal malpractice action in Texas against respondents and the California attorneys.[5] If California does not assume jurisdiction over respondents in the present action and Texas refuses to assume jurisdiction over the California attorneys in the Texas action, appellants will be forced to pursue, in two states against two groups of defendants, separate actions for legal malprac-

---

[5] Pursuant to appellants' request we take judicial notice of portions of the record in the Texas action. (Evid. Code, §§ 452, subd. (d), 459.)

tice allegedly committed by all defendants. Such multiple litigation well may result in conflicting adjudications on the issue of legal malpractice. The California Supreme Court "has repeatedly emphasized that this state and its residents and taxpayers have a substantial interest in providing a forum where a resident may seek whatever redress is due him. [Citations.] The state also has an interest from the point of view of the orderly administration of the laws in assuming jurisdiction in cases where most of the evidence is within its borders and where a refusal to take jurisdiction may result in multiple litigation." (*Hall* v. *University of Nevada* (1972) 8 Cal.3d 522, 525-526 [105 Cal.Rptr. 355, 503 P.2d 1363, 81 A.L.R.3d 1234], fn. omitted.) While respondents engaged in no activities within California, the tort of which they are accused arose out of their representation of California residents; only respondents' access to information located in California, and their contact with California residents, enabled them to undertake such representation. Accordingly, it is fair and reasonable to subject respondents to the jurisdiction of California courts.

## DISPOSITION

The order is reversed. Appellants shall recover their costs on appeal.

Johnson, J., and Woods (Fred), J., concurred.