Filed 10/25/23  Shankar v. ARAG CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PRASAD SHANKAR,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>ARAG, LLC, et al.,<br><br>        Defendants and Respondents. | A164088<br><br><br>(Contra Costa County<br>Super. Ct. No. MSC20-01895) |

Prasad Shankar, who has sued several parties regarding his legal representation in a custody dispute, appeals an order and a judgment dismissing two of them—California lawyer Terry Garibay and Ohio lawyer Bradley M. Kraemer.  Shankar hired Garibay to represent him while the dispute was pending in a California court, and Kraemer to represent him in proceedings in Ohio.  In this action, Shankar, who has represented himself both below and on appeal, sued Garibay and Kraemer for breach of contract and several torts, alleging they failed to represent him zealously and made misrepresentations in court that undermined his interests.  The trial court sustained Garibay's demurrer without leave to amend, holding Shankar had not stated any cause of action against her, and it granted Kraemer's motion to quash service for lack of personal jurisdiction of the claims against him, which all arise from his representation of Shankar in Ohio proceedings.  We will affirm both rulings.

1

# FACTUAL BACKGROUND[1]

## I.

### *Allegations of the Second Amended Complaint*

After Shankar filed initial and first amended complaints naming as defendants ARAG, LLC, and another ARAG entity, he filed the operative second amended complaint (SAC) in February 2021.  As relevant here, it added defendants Terry Garibay and Bradley Kraemer.  The SAC alleges Shankar was a party to a marital dissolution action in Monterey County Superior Court involving a dispute over custody of his child, and he was enrolled in a legal insurance plan administered by several ARAG entities (collectively ARAG) entitling him to help in finding an attorney, and to payment of the attorney fees.  ARAG provided him a list of attorneys in its network.

The SAC alleges that, after the Monterey court entered a "transfer order . . . to take [his] child from California to Ohio," Shankar hired two lawyers from ARAG's list:  Garibay and Kraemer.  As to Kraemer, the SAC attaches a copy of a representation agreement; as to Garibay, it alleges she

---

[1] We recite only those facts necessary to decide the issues on appeal, refer to parties not appearing on appeal only as necessary, and ignore factual representations by the parties that are not supported by citations to the record.  While Garibay has not filed a brief, "we do not treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but independently examine the record and reverse only if prejudicial error is found."  (*Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203.)  In evaluating the order sustaining Garibay's demurrer, we accept as true all facts alleged in the operative complaint.  (*Denny v. Arntz* (2020) 55 Cal.App.5th 914, 919.)  To evaluate the order quashing service on Kraemer, we set forth the facts alleged by Shankar and follow the trial court's approach of treating his submission as an offer of proof of those facts—none of which is disputed— without analyzing its evidentiary sufficiency, given that the allegations, even if proven, fail to establish jurisdiction.

signed a contract with Shankar but did not give him a copy. The SAC alleges Garibay and Kraemer each failed to represent Shankar with zeal, causing him to lose consortium with his child.

In particular, it alleges, "Garibay in one instance appeared in court unprepared and without moving papers" and, on a second occasion, "despite [Shankar]'s strong opposition," falsely pled in the Monterey proceeding that he did not want custody of his child and consented to the child being moved to Ohio. As to Kraemer, the SAC alleges he failed to present to the Ohio court a report by a child custody evaluation expert hired in Ohio, who assertedly opined it would be detrimental to Shankar's child to be moved from Ohio to Florida. He also alleges Kraemer pled in the Ohio court, "contrary to [Shankar]'s strong opposition," that Shankar consented to the child being moved to Florida, which he later was. Kraemer also allegedly exploited Shankar's "vulnerable position" to "extort" him to personally pay Kraemer $10,000 that ARAG should have paid.

The SAC repeats variations of those allegations to support causes of action against each defendant for fraud; business practices violating the Unfair Competition Law (UCL) (Bus. & Prof. Code, §§ 17200 et seq.); breach of contract; and intentional infliction of emotional distress (IIED). The SAC seeks, as damages for fraud and breach of contract, $100,000 for Shankar's "loss of consortium" with his child. On the UCL claim, it alleges "damages in the loss of consortium with his [child], for which he can be restituted to $100,000 economic value," and seeks restitution of travel and expert costs. For IIED, it seeks damages for "body trauma" and medical bills.

## II.

### *Garibay's Demurrer*

Garibay demurred to the first three claims of the SAC as failing to state causes of action, and to the IIED claim as time-barred. Shankar

opposed the demurrer as to all causes of action and sought leave to amend as necessary, but the trial court sustained the demurrer in full without leave to amend. It held the breach of contract claim failed because Shankar "fail[ed] to plead recoverable damages," as he pled "loss of custody and consortium of his [child]" but cited no "authority that these are recoverable damages for breach of contract." The fraud cause of action failed because he had not pled its elements with particularity—especially how *he* had detrimentally relied on Garibay's alleged misrepresentation *to the court* that he consented to his child being moved to Ohio. The UCL cause of action failed because he sought only damages, not the restitution to which monetary relief in private UCL actions is limited, and did not allege that he had given Garibay anything of value that can be restituted. The IIED cause of action, finally, was barred by the two-year statute of limitations, as a 2017 letter from Shankar attached to the SAC showed that Garibay's conduct had caused him distress by no later than 2017, yet he did not sue her until 2021.

## III.

### *Kraemer's Motion to Quash*

In response to the SAC adding him as a defendant, Kraemer concurrently demurred and moved to quash service for want of personal jurisdiction. His motion asserted he is an Ohio attorney who is not licensed to practice in California and does not conduct business here, and Shankar's claims arise from his representation of Shankar in transferring a child custody order to Ohio, where his child at the time lived, and moving in Ohio state court to modify the order. Shankar opposed the motion, contending he learned of Kraemer and his firm through their website and the ARAG list, which were accessible to California residents, and Kraemer agreed to represent him while knowing he lives in California, sent him a representation

4

contract that Shankar executed in California, communicated with Shankar here, and accepted payment originating from his California bank account.

The trial court granted the motion, finding no evidence Kraemer engaged in "substantial continuous and systematic" contacts with California subjecting him to general jurisdiction, and that neither his maintenance of an "essentially passive [website] accessible to citizens of [California] and everyone else," nor his limited contacts here while representing Shankar in Ohio litigation, could subject him to specific jurisdiction.

Shankar timely appealed the orders sustaining Garibay's demurrer and granting Kraemer's motion to quash.[2]

## DISCUSSION

## I.

## The Trial Court Did Not Err in Sustaining Garibay's Demurrer Without Leave to Amend.

We review de novo an order sustaining a demurrer, accepting as true all material facts properly pled while disregarding conclusions of fact or law (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318), giving the complaint a reasonable interpretation (*ibid.*), and exercising independent judgment as to whether it states a cause of action (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125).[3]

---

[2] The order quashing service for want of jurisdiction is appealable. (Code Civ. Proc., § 904.1, subd. (a)(3); subsequent undesignated statutory references are to the Code of Civil Procedure.) While the order sustaining a demurrer without leave to amend is not appealable, we treat Shankar's notice of appeal as taken from the ensuing judgment of dismissal, which the trial court entered in 2022. (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1090, fn. 4.)

[3] If a demurrer was sustained without leave to amend, we must decide if there is a reasonable possibility that amendment can cure the defect; if so, we will reverse. It is a plaintiff's burden on appeal to show how he or she can

5

### A. The Breach of Contract Cause of Action Fails for Want of Recoverable Damages.

The SAC alleges that Garibay's breaches of her contractual duty to zealously represent Shankar "led to loss of consortium of his [child] . . . , estimated to have economic value of $100,000." The cause of action identifies no other damages. Garibay's demurrer cited authority holding California does not permit a parent to recover damages *in tort* for loss of filial consortium. (*Baxter v. Superior Court* (1977) 19 Cal.3d 461, 463 (*Baxter*).)[4] The trial court, after noting that the harms Shankar attributed to Garibay's breaches of contract "are loss of custody and consortium of his [child]," noted more aptly his failure "to cite any authority that these are recoverable damages for breach of contract."

On appeal, Shankar contends only that damages have been "pled, jointly and severally for $120,000 <u>compensatory</u>" and "shown to be foreseeable, as [Garibay] knew that parent[al] rights of [Shankar] are involved." The latter assertion arguably reflects the impulse behind the rule that, although "damages for mental suffering and emotional distress are generally not recoverable in an action for breach of an ordinary commercial contract," such damages may be available if " 'the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.' " (*Erlich*

---

amend the complaint to state a cause of action. (*290 Division (EAT), LLC v. City and County of San Francisco* (2022) 86 Cal.App.5th 439, 450.) Here, however, Shankar does not contend the trial court should have allowed amendment or proffer any proposed amendments. Nor did he state how he could amend his claims in the trial court.

[4] *Baxter* noted that parents can "sue for the loss of the earnings and services of [their] child." (*Baxter*, *supra*, 19 Cal.3d at p. 462.) Shankar does not suggest that he intended his claim for loss of consortium with his child to include the value of earnings his child would have generated or services he would have provided.

*v. Menezes* (1999) 21 Cal.4th 543, 558.)  But Shankar has cited no authority and developed no argument as to why we should expand, to cover a claim of malpractice in a custody dispute, the above-quoted exception to the rule that emotional distress damages are unavailable in contract cases.

Appellate briefs must make cogent legal arguments supported by relevant authority.  (See *Hearn Pacific Corp. v. Second Generation Roofing, Inc.* (2016) 247 Cal.App.4th 117, 150.)  " 'We are not bound to develop appellants' arguments for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as [forfeited].' "  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)  And while Shankar is unrepresented by counsel, he "must 'be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' "  (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 628.)  Accordingly, he has forfeited any argument that his breach of contract cause of action comes within an exception to the general rule that damages for mental suffering and emotional distress are not available for breach of contract.

## B.  The Deceit Cause of Action Fails for Lack of Reliance.

The elements of a cause of action for deceit include the plaintiff's justifiable, detrimental reliance on the defendant's misrepresentation. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [listing elements].)  As the trial court noted, Shankar has not identified any way in which he relied— justifiably or otherwise—on the truth of Garibay's alleged misrepresentation to the court that he did not want custody of his child and consented to him being moved to Ohio, or how such reliance caused him harm.  Since the false representation concerned his own desires and mental state, he cannot have been deceived by Garibay's alleged statement or have relied to his detriment on a belief it was true.

7

Shankar's only attempt to address this issue on appeal is by asserting "[e]lements of intent, actual deception are proven as [Shankar] sees that Garibay was inciting [Shankar] to not appear by failing to file papers in defense of [Shankar], when he was facing allegations of serious nature by mother." That assertion has nothing to do with the cause of action in the SAC, which relies on Garibay's alleged misrepresentations to the court about Shankar's intent. If Shankar means to suggest a way he can amend the cause of action, he does not explain how Garibay's alleged failure to file papers could have deceived him into believing he should not appear in court. The trial court here thus did not abuse its discretion in sustaining Garibay's demurrer to this cause of action without leave to amend.

## C. The UCL Cause of Action Fails Because Shankar Identifies Nothing of Value that Garibay Could Be Ordered to Restore.

The only monetary remedy in a private action for violation of the UCL is restitution, not damages. (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 614.) " '[R]estitution' means the return of money or other property obtained through an improper means to the person from whom the property was taken." (*Id.* at p. 614.) " 'The object of restitution is to restore the status quo by *returning to the plaintiff* funds in which he or she has an ownership interest.' " (*Ibid.*) As the trial court noted, the SAC does not allege Garibay obtained funds or property *from Shankar* that she could be ordered to restore, making it impossible to award him restitution; any monetary relief against her would constitute damages, which are not available under the UCL.

Shankar's brief contends he "seeks economic loss as restitution on account of *him paying attorney fees* and not getting the representation contracted for," he "should have been allowed to make full claim of restitution (which included refund of fee *paid to* Garibay)," and he seeks "restitution damages (refund of attorney fees paid *on account of* Plaintiff)." (Italics

added.)  We do not take his one passing reference to "him paying attorney fees" as a representation that he can in good faith amend his complaint truthfully to allege he personally paid Garibay funds to which he is entitled to restitution, as opposed to ARAG having paid Garibay on his behalf.  The trial court ruled in clear, plain language:  "Plaintiff has not alleged he gave Garibay any money or property.  Thus, he has failed to allege there is anything [Garibay] must return to him."  Given the clarity of that ruling, and given how the SAC alleged that his insurance entitled him to have ARAG pay his attorney's fees, failed to allege he paid Garibay personally, and did allege Kraemer "used [the] vulnerable position of [Shankar] to extort $10,000 in attorney fees from him, which was to be paid to him by ARAG," Shankar has not adequately represented on appeal that he can amend the complaint to allege he personally paid Garibay funds that can be the object of an award of restitution.

### D.  The IIED Cause of Action Is Time-barred.

The limitations period for an IIED cause of action is two years. (*Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 852–853.)  " '[T]he statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant.' "  (*Ibid.*)

Shankar attached to the SAC a letter alleging Garibay made her false representations to the court in 2015 and making clear his child had moved to Ohio before June 2017.  Shankar thus necessarily suffered the emotional distress caused by his child's move by no later than 2017—and almost surely in 2015 or 2016—yet he did not sue Garibay until 2021.  His cause of action is time-barred on the face of the SAC.

On appeal, as he did below, he contends the statute of limitations had not run because the wrong is continuing, but as the trial court noted, he did

9

not explain how a continuing-wrong theory can apply in this context. Nor has he done so on appeal. He also asserts that, after Garibay's alleged 2015 misrepresentations to the court, she tried to induce ARAG to drop him from coverage or "incite" other attorneys against him, but he has not alleged or offered to amend the complaint to allege any acts by her after 2015 that can possibly qualify as not merely wrongful but "so extreme as to exceed all bounds of decency in a civilized community," as is required to support a cause of action for IIED. (*Berry v. Frazier* (2023) 90 Cal.App.5th 1258, 1273.)

## II.

### *The Trial Court Did Not Err in Granting the Motion to Quash.*

California's long-arm statute authorizes its courts to assert personal jurisdiction to the fullest extent allowed by the United States Constitution (Code Civ. Proc., § 410.10)—which, in turn, permits jurisdiction over any out-of-state defendant having " ' "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " ' " (*Jacqueline B. v. Rawls Law Group, P.C.* (2021) 68 Cal.App.5th 243, 251–252 (*Jacqueline B.*).)[5] " 'Minimum contacts exist where the defendant's conduct in, or in connection with, the forum state is such that the defendant should reasonably anticipate being subject to suit

---

[5] A trial court also may exercise jurisdiction over a party who forfeits objection thereto by making a general appearance. (*Roy v. Superior Court* (2005) 127 Cal.App.4th 337, 341.) Shankar claims Kraemer did so by "initially" filing a demurrer and "subsequently" filing a motion to quash, and failing in the former to state he was making a "special appearance." On the first point, Shankar is mistaken: Kraemer filed them concurrently on the same day. As the trial court explained, a party can file a demurrer concurrently with a motion to quash without forfeiting their objection to jurisdiction (§ 418.10, subd. (e)(3)). Shankar fails on appeal to refute that point or to cite authority requiring a party who satisfies section 418.10 to recite the words "specially appearing."

in that state.' " (*Id*. at p. 252.) " '[T]he primary focus of [the] personal jurisdiction inquiry is the' 'relationship' between the defendant and the 'forum [s]tate' [citation], and *not* the relationship 'between the plaintiff and the defendant.' " (*Ibid*.)

Personal jurisdiction comes in two flavors: (1) general (or "all-purpose") and (2) specific (or "case-linked"). (*Jacqueline B.*, *supra*, 68 Cal.App.5th at pp. 252.) General jurisdiction, which subjects a defendant to suit in a state by anyone, irrespective of the suit's subject matter, exists only if a defendant's affiliations with the state are so " ' " 'continuous and systematic' " ' " as to make the defendant " ' "essentially at home in the forum [s]tate." ' " (*Ibid*.) Specific jurisdiction subjects a defendant to suit in a forum state, but only as to a specific suit arising out of or related to the defendant's contacts with the forum. (*Ibid*.) Its existence thus turns on the relationship, on the facts of each case, between the defendant, the forum, and the litigation. (*Ibid*.) It exists only if (1) the defendant has purposefully availed himself or herself of forum benefits, (2) the controversy giving rise to the action relates to or arises out of the defendant's contacts with the forum, and (3) an assertion of jurisdiction would comport with " ' " 'fair play and substantial justice.' " ' " (*Ibid*.) The plaintiff bears the initial burden of proving the first two elements by a preponderance of the evidence. (*Ibid*.) If the plaintiff does so, the burden shifts to the defendant to show why an exercise of jurisdiction would not comport with fair play and substantial justice. (*Ibid*.)

"In reviewing a trial court's dismissal for lack of personal jurisdiction, we independently review the trial court's legal rulings and its application of the law to its factual findings." (*Jacqueline B.*, *supra*, 68 Cal.App.5th at

11

p. 251.) (We review any challenged factual findings for substantial evidence (*ibid.*), but this appeal involves no such challenges.)

## A. Kraemer Is Not Subject to General Jurisdiction in California.

Shankar argues that Kraemer is subject both to general and to specific jurisdiction here. The former is much harder to show because, as noted, it requires "affiliations" with a forum state "so 'continuous and systematic' as to render [the party] essentially at home" in that state. (*Goodyear v. Dunlop Tires Operations, S.A. v. Brown* (2011) 564 U.S. 915, 919.) Despite making nominally distinct arguments on each issue, Shankar bases his general-jurisdiction argument almost entirely on facts specific to this case—facts that logically relate to the issue of *specific* jurisdiction. The only "continuous and systematic" affiliations with California he alleges are that Kraemer's Ohio law firm maintains a website accessible throughout the nation, including California, and the firm and Kraemer appear on a list of attorneys made available here by ARAG.[6] Those contacts do not come close to making Kraemer so "at home" here as to be subject to general jurisdiction. (*Goodyear*, at p. 919.) Shankar's claim is colorable only as one of specific jurisdiction, to which we now turn.

## B. Kraemer Did Not Purposefully Avail Himself of Forum State Benefits in a Way Subjecting Him to Specific Jurisdiction.

The conduct Shankar invokes to show that Kraemer " ' "purposefully availed himself . . . of forum benefits," ' " and that this action " ' " 'is related to or "arises out of" ' " ' " his contacts with California (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 253) is very scant: After Shankar learned of Kraemer

---

[6] While Shankar notes that ARAG does business in California, his SAC alleges ARAG is based in Iowa and describes the list of lawyers as "issue[d] by ARAG Group, [address], IA [Iowa]." He does not suggest ARAG tailored or targeted the list to California residents.

through his firm's website and ARAG's list, Kraemer emailed Shankar a representation agreement while knowing he lives in California, which Shankar signed and returned from here, after which Kraemer telephoned him in California multiple times to advise him about his case, and accepted payment from Shankar's California bank account. Shankar does not dispute that the litigation for which he hired Kraemer proceeded in an Ohio court and concerned custody of a child living in Ohio, and he does not claim Kraemer solicited him to become a client, visited or investigated the case in California, or was licensed to practice law in, applied the law of, or associated himself with lawyers based in California.

Many courts—including our sister Courts of Appeal and federal and state courts around the country[7]—have addressed when out-of-state lawyers subject themselves to jurisdiction by representing a forum state's residents in out-of-state litigation. The majority view is that lawyers do not purposefully avail themselves of forum state benefits if, while taking no affirmative steps to solicit business in the state, they merely respond to a request by a resident thereof to represent them in litigation in the attorney's state, and then secure execution of a retainer agreement by, communicate with, and accept payment from the client in the forum state, in routine ways incident to an attorney-client relationship. (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 256; accord, *Newsome v. Gallacher* (10th Cir. 2013) 722 F.3d 1257, 1280–1281.)

---

[7] Absent authority from the California Supreme Court, we look first to opinions from other Courts of Appeal, but because California law authorizes jurisdiction to the fullest extent allowed by the federal Constitution (Code Civ. Proc., § 410.10), the question here is one of federal law, so we consider the persuasive weight of opinions from federal courts and other state courts construing the federal Constitution. (See, e.g., *Jacqueline B.*, *supra*, 68 Cal.App.5th at pp. 255–256.)

*Jacqueline B.*, *supra*, 68 Cal.App.5th 243 is instructive both for the similarity of its jurisdictional facts and for its synthesis of California case law in this area. The plaintiff, while living here, was sexually abused by a counselor at the Department of Veterans Affairs (VA) and filed an administrative claim under the Federal Tort Claims Act (FTCA) (28 U.S.C. § 2671 et seq.). (*Jacqueline B.*, at pp. 247–248.) She searched online for lawyers to exhaust her claim, pursue settlement, and file suit if needed. She found the Web site of a Virginia firm, which touted its " 'nationwide' " practice handling FTCA claims and enabled users to contact the firm. (*Jacqueline B.*, at pp. 248–249.) She did so via the Web site's chat function and then by phone; the firm sent her a retainer agreement in California; and she signed it and returned from here. (*Id.* at p. 249.)

The next day, plaintiff left California for an extended, indefinite period. (*Jacqueline B.*, *supra*, 68 Cal.App.5th at pp. 249–250, 257.) Over the ensuing two months, she stayed with friends and family around the country, and the firm negotiated the case with a VA lawyer based in Arizona. (*Id.* at p. 250.) No one from the firm was licensed to practice in California, spoke with attorneys here, or traveled here to investigate the case. (*Ibid.*) The firm secured a settlement offer, sent it to the plaintiff's then-address in Virginia, and recommended she accept it, which she did. (*Ibid.*) She later sued the firm and two of its lawyers in California for malpractice, contending they had misadvised her to accept the settlement based on a mistaken belief that a California statute capping noneconomic damages would have limited her recovery had she rejected the offer and filed suit under the FTCA. (*Jacqueline B.*, at pp. 249–250.)

Affirming an order quashing service, the Second District held the firm "did not purposefully direct any activities toward California residents"; at

14

most, it "operated a [Web site] that could be accessed by California residents, but . . . did not target [them]," and "it was plaintiff who first contacted defendants." (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 254.)  Here, too, Shankar did not show that Kraemer's firm's Web site targeted California residents or Kraemer initiated contact with him.  The *Jacqueline B.* court added that the Virginia firm did not "purposefully derive any benefit from [California] over and above the . . . fee promised in the retainer agreement," applying a rule that "a discrete, shorter term contract between an out-of-state defendant and a forum resident 'does not automatically establish purposeful availment.' " (*Id.* at pp. 255 [citing cases].)  That principle, too, applies here. Shankar did not show Kraemer purposefully derived any benefit from California beyond the fee for his work in Shankar's Ohio case.

The *Jacqueline B.* court reviewed many opinions from California and elsewhere examining when courts can exert jurisdiction over out-of-state lawyers sued for malpractice.  (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 255.)  It gleaned a list of factors to assess in such cases:  (1) whether a client lived in the forum state when they hired the lawyer and when the lawyer provided services; (2) whether the lawyer was located in, licensed to practice in, or associated as cocounsel with lawyers in the forum state; (3) whether a retainer agreement was executed in, or the duty to pay was enforceable solely via legal process in, the forum state; (4) whether services were provided in the forum state and, if the services involved litigation, whether the lawyer acquired evidence in, filed suit in, or invoked the legal process of the forum state; and (5) whether the services involved misapplication of forum state law.  (*Id.* at pp. 255–256.)  Of those factors, the first supported jurisdiction in part (given the plaintiff's departure from California during the representation), and the third and fifth factors

15

supported jurisdiction in full, yet the court held the totality of factors insufficient to give rise to jurisdiction in California. (*Id.* at p. 256.)

Shankar's showing is weaker: Only the first and third factors support jurisdiction. While the first does so in full (as he lived in California throughout Kraemer's representation), the fifth does not apply at all, as Shankar has not claimed that Kraemer's services involved any application of California law.

Ultimately, the *Jacqueline B.* court applied the majority rule that, if an out-of-state lawyer's only contacts with a state are a client's residency in, execution of a retainer contract in, and payment of fees from that state, it is "not enough" to support jurisdiction. (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 256, citing *Sher v. Johnson* (9th Cir. 1990) 911 F.2d 1357, 1366 [Florida lawyers contacted by California man to represent him in Florida case], *Edmunds v. Superior Court* (1994) 24 Cal.App.4th 221, 234–236 [Hawaii lawyers represented California client in Hawaii case].) While *Jacqueline B.* identifies exceptions to the rule, they apply "if additional factors are present— such as . . . investigation and acquisition of evidence in the forum state, the execution of a deed of trust in the client's property in the forum state as collateral for payment, or association with cocounsel operating in the forum state." (*Jacqueline B.*, at p. 256, citing *Brown v. Watson* (1989) 207 Cal.App.3d 1306, 1313–1315 [Texas lawyers representing California clients in Texas personal injury case engaged in purposeful availment by gathering evidence from California of clients' injuries and associating with California cocounsel]; *Sher*, at p. 1363 [Florida firm engaged in purposeful availment by taking deed of trust on California client's home to secure payment].) Like the plaintiff in *Jacqueline B.*, Shankar has not shown that his case involves any such factors.

We agree with how *Jacqueline B.* harmonizes California case law and synthesizes it with the majority rule.  Under that rule, Kraemer is not subject to specific jurisdiction here for an action based on the legal services he was hired to provide in Ohio.  (*Jacqueline B.*, *supra*, 68 Cal.App.5th at p. 56.)

## DISPOSITION

The January 26, 2022 judgment dismissing Terry Garibay, and the November 18, 2021 order quashing service of process on Bradley M. Kraemer, are affirmed.  Respondents shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

17

_____
STEWART, P.J.

We concur.


_____
RICHMAN, J.


_____
MARKMAN, J.[*]


*Shankar v. ARAG, LLC, et al.* (A164088)


_____

[*] Judge of the Alameda Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.